**SO ORDERED.**

**SIGNED this 18 day of September, 2015.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                                          CASE NO. 14-06078-5-DMW

MARK A. TROJANOWSKI
                                                                                                           CHAPTER 13
                    DEBTOR

ORDER ALLOWING OBJECTION TO CLAIM

This matter comes on to be heard upon the Objection to Claim[1] filed by Mark A. Trojanowski ("Debtor") on December 5, 2014 and the response filed by the Internal Revenue Service ("IRS"). The court conducted a hearing in Raleigh, North Carolina on May 12, 2015. J.M. Cook, Esq. appeared for the Debtor, and Jonathan D. Carroll, Esq. appeared on behalf of the IRS. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this

---

[1] The grounds for relief asserted in the Objection to Claim relate to the timing of the Debtor's tax returns. At the hearing, the parties clarified that the issues for the court to decide are in fact unrelated to the timing of the Debtor's tax returns. Because of the change in issues between the time the pleadings were filed and when the hearing was held, the pleadings are not particularly helpful or relevant and the court is limited to basing its ruling upon what was presented at the hearing.

matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on October 19, 2014 ("Petition Date").

3. The Debtor and Sandra Trojanowski married on October 21, 1995 and divorced in 2009.

4. The Debtor and Ms. Trojanowski executed a Separation Agreement and Property Settlement ("Agreement") effective November 2, 2009. At the time the Agreement was executed, Ms. Trojanowski was residing in what was formerly the marital residence ("Residence") owned as tenants by the entireties by the Debtor and Ms. Trojanowski until their divorce. Upon the divorce, that tenancy was severed, and the Debtor and Ms. Trojanowski each became the owner of a one-half interest in the Residence as tenants-in-common.

5. At the time of the execution of the Agreement, the Debtor resided at 102 21st Street, Oak Island, North Carolina ("Oak Island Property"). Navy Federal Credit Union ("Navy Federal") held two deeds of trust upon the Oak Island Property for which the Debtor was to be solely liable as provided in Section 2.3 of the Agreement.

6. Section 2.2 of the Agreement states that Ms. Trojanowski shall make all mortgage payments on the Residence until she refinances or sells the Residence. The Residence was encumbered by a deed of trust and a home equity line of credit, both in favor of Navy Federal, when the Agreement was executed. Section 2.2 of the Agreement contemplates Ms. Trojanowski refinancing or selling the Residence before November 2, 2011, and the Debtor transferring his interest in the Residence contemporaneously with any refinance or sale. The Agreement is clear

that the Debtor was not to be liable for any indebtedness on the Residence, just as Ms. Trojanowski was not to be liable for the debts secured by the Oak Island Property.

7. The Debtor testified that after the parties executed the Agreement, Ms. Trojanowski had difficulty finding any refinancing option with rates comparable to those on the Navy Federal obligations. The Debtor and Ms. Trojanowski agreed that in order to maintain the favorable loans owed to Navy Federal, Ms. Trojanowski would not refinance as contemplated by the Agreement.

8. Section 3.1 of the Agreement states that beginning November 5, 2009, the Debtor shall pay to Ms. Trojanowski the amount of $3,420.00 per month for 72 months "as tax-deductible alimony" plus quarterly payments in the amount of $6,500.00 for 23 quarters (collectively, "Alimony").[2]

9. Section 5.1 of the Agreement states that beginning November 5, 2009, the Debtor shall pay to Ms. Trojanowski the amount of $2,000.00 per month as child support ("Child Support") for the couple's minor child.

10. The Debtor asserts he made all Alimony and Child Support payments required under the Agreement in 2010. Ms. Trojanowski filed a Proof of Claim on February 2, 2015 asserting a claim for overdue Child Support, but the arrearage claimed by Ms. Trojanowski is limited to amounts owed in 2013 and 2014. Ms. Trojanowski has not asserted that the Debtor is delinquent for any Child Support owed in 2010.[3]

---

[2] Section 3.3 of the Agreement includes a provision whereby the Debtor's Alimony obligations shall be decreased in the event of "involuntary unemployment, involuntary underemployment, or partial or total disability" that results in a certain decrease in income. The Debtor has asserted that his current Alimony obligations should be reduced pursuant to Section 3.3 of the Agreement, but that issue is not currently before the court.

[3] Ms. Trojanowski does assert that under Section 5.3 of the Agreement the Debtor is delinquent on payments of up to $75.00 per month for the couple's minor child's "extracurricular activities" from October 2009 through October 2014. This alleged amount owed is separate from and exclusive of the Child Support obligation of $2,000.00 per month.

11. On his 2010 Federal income tax return ("2010 Return"), the Debtor deducted the Alimony payments from his gross income pursuant to 26 U.S.C. § 215. The IRS conducted an audit of the 2010 Return, and in response to a request from the IRS for evidence of Alimony paid in 2010, the Debtor prepared an itemized record ("Alimony Record") of 2010 Alimony payments. The Debtor sent the Alimony Record and corresponding bank statements to the IRS. The Debtor testified that the IRS never requested any evidence of Child Support paid in 2010.[4]

12. The Alimony Record shows that throughout 2010, the Debtor made all bi-weekly mortgage payments to Navy Federal that came due on the Residence. The Debtor also made ten payments to Navy Federal toward the equity line of credit secured by the Residence and three payments totaling $110.85 to CPI Security ("CPI"), presumably for security services on the Residence. In addition to making direct payments to Navy Federal and CPI, the Debtor remitted payments directly to Ms. Trojanowski each month in varying amounts.

13. The Alimony Record itemizes gross payments in the amount of $80,241.51, but notes that of that amount, the sum of $13,201.51 was paid to Ms. Trojanowski as Child Support, rather than Alimony. The net amount of $67,040.00 that was paid to Ms. Trojanowski and reported on the Alimony Record was for all Alimony due in 2010. The Debtor asserts that he paid all Child Support due in 2010 ($24,000.00) but only reported Child Support payments on the Alimony Record that were comingled with Alimony payments. In other words, the Debtor asserts he paid an additional $10,798.49 in Child Support in 2010, but because those payments did not include any Alimony owed to Ms. Trojanowski and were paid from a different bank account than the

---

[4] At the hearing, counsel for the IRS presented the Debtor with notices that were allegedly sent to the Debtor contesting his 2010 Alimony deduction and requesting additional information. Those notices were sent to an address at which the Debtor claims he no longer lived as of the dates of the notices. The Debtor testified that the only relevant correspondence from the IRS of which he was previously aware was the request in response to which he sent the Alimony Report.

payments listed on the Alimony Record, they were not included on the Alimony Record provided to the IRS in response to its request.

14.     The IRS, in calculating the amount of Alimony eligible for deduction in 2010 under 26 U.S.C. § 215, asserts that without additional evidence that the Debtor paid the full $24,000.00 in Child Support due in 2010, the full $24,000.00 of Child Support should be deducted from the gross payments of $80,241.51 on the Alimony Record.  The IRS further asserts that the payments made to Navy Federal and CPI on Ms. Trojanowski's behalf cannot qualify as Alimony because the Debtor held an interest in the Residence when those payments were made.

15.     As a result of the IRS' adjustments to the Debtor's 2010 Alimony deductions and corresponding adjustments to taxable income, the IRS asserts the Debtor owes additional income taxes for 2010.  The IRS filed a Proof of Claim ("Claim") on October 31, 2014, asserting income taxes due for 2010 in the amount of $16,429.00 plus interest and penalties.

16.     The court must consider two primary issues in determining what amount the Debtor was eligible to deduct from his 2010 income.  First, the court must decide whether it was appropriate for the IRS to assume the full $24,000.00 in Child Support owed for 2010 should be deducted from the $80,241.51 in payments listed on the Alimony Record.  Second, the court will determine whether the payments to Navy Federal and CPI qualify as deductible Alimony.

17.     <u>Child Support Payments</u>.

    a.     According to 26 U.S.C. § 71(c)(3), if any payment made under a divorce or separation instrument[5] is less than the total amount required to be paid under the instrument, "then so much of such payment as does not exceed the sum payable for [child] support shall be considered a payment for [child] support."

---

[5] As that term is defined by 26 U.S.C. § 71(b)(2).

      b.      In applying 26 U.S.C. § 71(c)(3), the United States Tax Court has stated – perhaps more clearly than the Internal Revenue Code – that "where a taxpayer's payments during the year do not exceed his obligation for child support payments, the payments made will be allocated to the taxpayer's child support obligation," rather than the tax-deductible alimony obligation. *Bacon v. Commissioner*, T.C. Memo 1989-90 (T.C. 1989) (citing *Smith v. Commissioner*, 51 T.C. 1 (1968)).

      c.      The court agrees that if the IRS were able to show that the Debtor made no other payments to Ms. Trojanowski during 2010 other than those payments listed on the Alimony Report, then the Debtor's Alimony deduction would have to be reduced. The Debtor testified that he made all Child Support payments required under the Agreement in 2010, and Ms. Trojanowski has not asserted a claim for 2010 Child Support.

      d.      The IRS asserts that the Debtor should have provided proof of payment of Child Support when he sent the Alimony Report and corresponding bank statements showing Alimony payments to the IRS, but the Debtor was only asked to provide evidence of Alimony payments. The IRS cannot base its claim on the fact that the Debtor did not provide information for which he was never asked (or for which requests were sent to an old address).

      e.      Based on the Debtor's credible testimony and in the absence of any assertion from Ms. Trojanowski that the Debtor failed to pay required Child Support in 2010, the court finds that the Debtor made all Child Support payments that were due in 2010. The Debtor has overcome the burden of contesting the validity of the IRS' assertion that he did not make those payments. Accordingly, the portion of the Claim that stems

from the adjustment deduction by the IRS of the Debtor's Alimony, pursuant to 26 U.S.C. § 71(c)(3), should be disallowed.

18. <u>Payments to Navy Federal and CPI</u>.

    a. Subsection (b)(1) of 26 U.S.C. § 71 lists four requirements that must be met for a payment to an ex-spouse to qualify as alimony.

> The term "alimony or separate maintenance payment" means any payment in cash if—
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

26 U.S.C. § 71(b)(1).

    b. The Code of Federal Regulations issued by the Department of the Treasury includes various explanations of what payments qualify under 26 U.S.C. § 71(b)(1). In 26 CFR § 1.71-1T(b), the IRS states that "[a]ny payments to maintain property owned by the payor spouse and used by the payee spouse (including mortgage payments, real estate taxes and insurance premiums) are not payments on behalf of a spouse even if those payments are made pursuant to the terms of the divorce or separation instrument." In other words, a taxpayer cannot claim a deduction for payments for which he was independently responsible when payments were made.

  c. The IRS asserts that because in 2010 the Debtor remained liable on the promissory notes held by Navy Federal, and because the Debtor maintained a legal interest in the Residence in 2010, the payments listed on the Alimony Record that went to Navy Federal cannot qualify as Alimony.

  d. The court cannot agree with the IRS under the facts of this case. The provisions of the CFR cited by the IRS are ambiguous and inconsistent.

    i. The question and answer format of the CFR may help in certain circumstances, but it surely does not in this case. In 26 CFR § 1.71-1T(b), the section deals with "property owned by the payor spouse." The Residence is not owned by the Debtor ("payor spouse"). It is owned by both the Debtor and Ms. Trojanowski. For the CFR to be effective, the language must be more precise. A reference to property in which a "payor spouse" has an interest would be more precise.

    ii. In the answer portion of A-7 within § 1.71-1T(b), the CFR states that payments of cash may be made to a third party at the written request of the payee spouse. No exclusion or exception is made for payments related to mortgages. 26 CFR § 1.71-1T(b).

  e. While the Debtor did remain liable to Navy Federal, the Debtor held no equitable interest in the Residence in 2010. The Agreement did not contemplate that a subsequent sale of the Residence would result in any proceeds to the Debtor, because the Residence was considered by the parties to be owned by Ms. Trojanowski upon execution of the Agreement. Ms. Trojanowski – not the Debtor – was responsible for making all payments to Navy Federal. The Debtor had nothing to gain from making the payments to

Navy Federal, other than a credit against Alimony owed under the Agreement.  The equal and mutual obligations of the parties on the debts on the Residence and Oak Island Property indicate a clear intent for each party to be held harmless by the other's potential default.  To hold that the payments do not qualify as Alimony because the Debtor did not first transfer the funds to Ms. Trojanowski to remit those same funds to Navy Federal would be placing form over substance.  The court finds that the Regulation cited by the IRS is not binding on the facts and circumstances of this case.

   f.  The court notes that the IRS could have presented evidence regarding which party took a deduction for interest paid to Navy Federal in 2010, but the IRS elected not to provide that evidence or advance that argument.  The IRS presented no evidence that the Debtor received any benefit for his direct payments to Navy Federal other than a credit against Alimony owed.  The analysis may be quite different if the IRS had presented evidence that the Debtor took a tax deduction for the payments made to Navy Federal for the debts secured by the Residence.  Similarly, the IRS has not alleged that Ms. Trojanowski failed to claim the payments made to Navy Federal on her behalf as taxable income.  Under the evidence as presented at the hearing, it appears that the Debtor and Ms. Trojanowski paid their portion or more of the taxes that were due to the IRS.  Based on that lack of evidence and the testimony of the Debtor, the payments the Debtor made to Navy Federal in 2010 were made on behalf of Ms. Trojanowski and qualify as Alimony pursuant to 26 U.S.C. § 71(b)(1).

   g.  The IRS did not elaborate at the hearing on its position that the payments made to CPI could not qualify as Alimony.  The court finds that the $110.85 in payments made to CPI in 2010 on behalf of Ms. Trojanowski qualify as Alimony.

        h.        The Debtor has met his burden in showing that the payments to Navy Federal and CPI qualify as Alimony under 26 U.S.C. § 71(b)(1). The portion of the Claim that stems from the IRS' addition of those amounts to the Debtor's 2010 taxable income should be disallowed.

19.        Because the court finds that none of the adjustments to the Debtor's taxable income in 2010 was warranted, the Claim should be disallowed in full; now therefore,

It is ORDERED, ADJUDGED and DECREED that the Debtor's Objection to Claim is sustained. The Claim filed by the IRS on October 31, 2014 is hereby disallowed in full.

END OF DOCUMENT